Dear Ms. Waskom:
On behalf of the Louisiana Registrar of Voters Association, Inc., you requested the opinion of this office concerning the discretionary powers of the Commissioner of Administration relating to legislative mandates. You advised that the Commissioner of Administration denied the Registrars of Voters merit increases for the fiscal year beginning July 1, 2002.
The compensation of the registrar of voters, the chief deputies and the confidential assistants is set forth in R.S. 18:55, et seq. The compensation for each of these persons is based on population with the salary ranges and pay schedules set forth in statute. R.S. 18:55, R.S.18:59. These statutes further provide for merit pay for the registrar, chief deputy and confidential assistant. Merit pay for the registrar is found at R.S. 18:55(A)(4)(b), as follows in pertinent part:
 Each registrar whose salary is at the level of step one or higher shall be evaluated as to merit in January. The criteria and procedure for the merit evaluation shall be determined by the commissioner of elections in conjunction with the Registrar of Voters Association. It shall provide that each registrar be evaluated by the commissioner of elections or his designee acting on his behalf. Upon a finding of "excellent" on a merit evaluation, the registrar shall receive a salary increase to the next step until the registrar's salary is equal to the highest step of the appropriate population range.
Similar statutes are found authorizing merit pay for the chief deputy registrar and the confidential assistant, except that the criteria and procedure for the merit evaluation is to be determined by the Registrar of Voters Association with evaluations to be conducted by the registrar of the particular parish involved. R.S. 18:59(B)(4)(b); R.S. 18:59(C)(4)(b).
R.S. 18:59:1 states as follows:
 All monies made available from state funds for the payment of the state portion of the salaries and expenses of registrars of voters and their confidential assistants, deputy registrars, and other personnel shall be appropriated to and be paid to each such person by the commissioner of elections in accordance with each appropriation for the purpose. The commissioner of elections shall include in his annual budget an amount necessary for the purpose, and the monies so appropriated shall be withdrawn from the treasury upon warrants drawn by the commissioner and payments therefrom shall be made in accordance with applicable law. (Emphasis added)
Concerning the State budgetary process, La. Const. Art. VII, Sec.11(A) provides in pertinent part as follows:
 The governor shall submit to the legislature, at the time and in the form fixed by law, a budget estimate for the next fiscal year setting forth all proposed state expenditures. This budget shall include a recommendation for appropriations from the state general fund and from dedicated funds . . . which shall not exceed the official forecast of the Revenue Estimating Conference and the expenditure limit for the fiscal year. . . .
The "time and in the form fixed by law" are found in Title 39 of the Louisiana Revised Statutes, as amended. R.S. 39:28 provides that the budget office shall prescribe budget request forms to be used by each budget unit, which shall be transmitted to each budget unit on or before September 20 of each year. The budget office is also required to furnish to each budget unit a set of specific guidelines under which the budget unit shall provide information to allow the budget office to establish a continuation budget. R.S. 39:29. R.S. 39:33(A)(1), requires that, on a date specified by the Commissioner of Administration, but not later than November 15th of each year, the head of each budget unit submit to the Governor, the Joint Legislative Committee on the Budget and the Legislative Fiscal Office an estimate of financial requirements and receipts of the budget unit for the ensuing Fiscal Year. R.S. 39:32
requires the agency to submit its request at the existing operating budget level with a prioritized listing of budget packages to increase or decrease the existing operating budget. The Governor is required to prepare an executive budget, submit a copy to the Joint Legislative Committee on the Budget forty-five (45) days, except that during the first year of each term it shall be submitted 30 days, prior to the beginning of the regular session of the Legislature and transmit a copy to each member of the Legislature on the first day of the regular session. "Executive budget" is defined in R.S. 39:2(14) to mean the document submitted to the legislature at each regular session, pursuant to the provisions of Title 39 of the Revised Statutes and Article VII, Section 11(A) of the Constitution of Louisiana, presenting the governor's recommended complete financial plan for each year.
R.S. 39:34 further provides that the executive budget is to present a complete financial and programmatic plan for the ensuing fiscal year which shall include recommendations for appropriations from the state general fund and dedicated funds which shall not exceed the official forecast of the Revenue Estimating Conference. In connection with preparing the executive budget, the governor is authorized to direct such changes or revisions in policy and program, and in specific details, as he may find warranted. R.S. 39:35. R.S. 39:36 sets forth the requirements as to content and format of the executive budget and also requires the Governor to submit a budget message in the executive budget summarizing the proposed financial plan and programmatic policies, including a statement of impact that his proposed recommendations have on the existing operating budget.
The financial plan presented in the executive budget is enacted into law by the legislature by the passage of such appropriation and revenue acts and such other acts as the legislature may deem necessary to make the financial plan effective and with such amendments as may be determined by the legislature. R.S. 39:53(A). The legislature has absolute control over the finances of the state, except as limited by constitutional provisions. Woodard v. Reily, 244 La. 337, 152 So.2d 41
(La. 1963). It is the legislature that decides how the branches and departments of government shall be funded from the public fisc.Louisiana Public Facilities Authority v. Foster, 2001-0009 (La. 9/18/01), 795 So.2d 288; Quarles v. Jackson Parish Police Jury,482 So.2d 833 (La.App. 2 cir. 1986), citing State ex rel. AssistantDist. Attys. Ass'n v. Theriot. 242 So.2d 49 (La.App. 1 Cir. 1970).
After the legislature enacts the budget, it is then sent to the Governor for his signature. La. Const. Art. III, Sec. 15. The State Constitution prohibits the passage of an unbalanced budget. La. Const. Art. VII, Sec. 10(E). The Governor may veto any line item appropriation, subject to legislative override. La. Const. Art. III, Sec.16.
After enactment of the budget, the legislative fiscal office is required to prepare a legislative summary of appropriations which shall describe the changes, by program, which occurred from the proposals submitted by the governor in the executive budget and for revenue raising bills through the enactment of the various appropriation and revenue acts. R.S. 39:55.
Thus the Commissioner of Administration is mandated to prepare an executive budget utilizing the budget requests submitted by the various entities which receive State appropriations, which includes the Department of Elections on behalf of the registrars, yet the total of which cannot exceed the official forecast of the Revenue Estimating Conference. We were unable to find any statute which grants the Commissioner the discretion to determine which of the multitude of statutes requiring annual funding to exclude in the executive budget.
The situation which seems most analogous to the question presented in this opinion request is the requirement that parish governing bodies pay the legislatively mandated expenses of officials such as district attorneys, coroners, clerks of court, etc. In those instances the legislature determines the duties of state officials such as coroners, and delegates some of the responsibility for funding the coroner's office to parish governing bodies. When the legislature places the burden of paying salaries or other expenses of a state official on parish governing authorities, those bodies are generally obliged to pay these mandated expenses. See, Carriere v. St. Landry Parish Police Jury, 97-1914 (La. 3/4/98), 707 So.2d 979; Perron v. Evangeline Parish Police Jury, 2001-0603 (La. 10/16/01), 798 So.2d 67; Reed v. Washington Parish PoliceJury, 518 So.2d 1044, 1046 (La. 1988).
In this instance, the legislature determines, by statute, which expenses of government it desires to fund. The Commissioner must then develop an executive budget including those expenses yet ensure that the total amount of recommended appropriations do not exceed the official forecast.
It must be emphasized that the executive budget is merely a recommendation to the legislature. R.S. 39:2; R.S. 39:34; R.S. 39:35; R.S. 39:55. The legislature is authorized to appropriate monies for different purposes and/or in different amounts than what is set forth in the executive budget. La. Const. Art. III, Sec. 16; R.S. 39:53; R.S.39:55.
Accordingly, it is the opinion of this office that the Commissioner of Administration is not given the discretion to exclude in the executive budget, the programs or expenses which the legislature has stated must be funded.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
DATE RELEASED: May 17, 2002